*In re* MARRIAGE OF SAMUEL ASCH, Petitioner-Appellee, and DEIRDRE ASCH, Respondent-Appellant.

First District (2nd Division)    No. 80-1641

Opinion filed September 15, 1981.

Jacobs, Camodeca & Timpone, of Chicago (William R. Jacobs, II, and Jerome Marvin Kaplan, of counsel), for appellant.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Samuel E. Asch petitioned for dissolution of his marriage to Deirdre R. Asch. Final judgment for dissolution of marriage was entered on September 5, 1979, and was modified by the partial granting of respondent's post-trial motion on May 7, 1980. Respondent appeals the adequacy of the trial court's award of maintenance and the trial court's action reserving jurisdiction to review the maintenance award after three years.

Samuel and Deirdre Asch were married on December 19, 1945. On November 30, 1977, after 32 years of marriage, Samuel petitioned for dissolution of the marriage, alleging that respondent was guilty of extreme and repeated mental cruelty. When the petition was filed petitioner was 50 years of age and respondent 52 years of age. The parties have four children, all but one of whom were self-supporting at the time of trial. Petitioner was a self-employed insurance agent and respondent was unemployed. Respondent had been employed for brief periods during the marriage, including work at a hotel, as a physician's assistant, as a volunteer for the Lincoln Park Zoo, as a photographer, and in the past few years has led a number of safaris in Africa.

The grounds for dissolution were uncontested. On July 16, 1979, the trial court concluded, *inter alia*, that petitioner had provided the sole support for the family during the marriage and that both parties were in relatively good health. The court valued the marital property and divided it as follows. Property apportioned to petitioner as part of the settlement consisted of:

| | |
|---|---:|
| South Longwood Street home ($50,000 value; $7000 mortgage) | $43,000 |
| Asch & Associates (insurance business) | 12,000 |
| Asch & Associates profit sharing plan | 1,462 |
| Asch & Associates note to petitioner | 15,000 |
| Equitable Life Investment Plan | 5,400 |
| One-half cash value of life insurance | Undetermined |
| Business furniture | Undetermined |
| One-half of furniture and furnishings | Undetermined |
| 1977 Buick | Undetermined |
| 75% of Equitable Life Assurance pension | Undetermined |
| Total | $76,862 plus undetermined values.[1] |

Property apportioned to respondent as part of the settlement consisted of:

| | |
|---|---:|
| 400 East Randolph Condominium ($33,000 value; $20,000 mortgage | $13,000 |
| Uptown Federal Savings escrow account | 800 |
| 20 shares Northern Indiana Public Service stock | 1,000 |
| Respondent's mother's savings account | 290 |
| Asch Wildlife Company (photographic business) | Undetermined |
| One-half cash value of life insurance | Undetermined |
| 1976 Ford | Undetermined |
| Beneficial interest in $30,000 life insurance policy | Undetermined |
| One-half of furniture and furnishings | Undetermined |
| 25% of petitioner's Equitable Life Assurance pension (when received) | Undetermined |
| Cash | 34,000 |
| Total | $40,090 plus undetermined values. |

---

[1] We note that the trial court failed to make value determinations as to certain marital assets. Such a failure may not comply with the requirements of a recent decision of this court (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 565, ___ N.E.2d ___). As the parties chose not to raise that issue, we will not consider it.

Petitioner's gross income was approximately $43,000 in 1978. He claimed expenses of $3,542 per month and respondent claimed expenses of $2,290 per month. The court awarded respondent $90 per week rehabilitative maintenance for three years. This award was based on the court's determination that respondent was unable to financially maintain herself at that time but would be able to do so upon procurement of appropriate employment.

On October 4, 1979, respondent filed a post-trial motion seeking an increase of the maintenance award to $1,500 per month and requesting the court to vacate that portion of the judgment limiting maintenance to three years. Acting on that motion, the trial court increased the award from $90 to $150 per week. The court also ruled that, in light of *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868 (holding that while the trial judge is authorized to make awards of limited duration, such awards should not be based on speculation as to the future condition of the parties), the maintenance order would be modified to eliminate the automatic termination after three years. Instead, the maintenance would continue for three years, at which time the court would determine whether respondent had made appropriate and reasonable efforts to procure suitable employment and maintain herself financially.

Respondent's first contention on appeal is that the trial court abused its discretion in awarding her only $150 per week. In support of her position respondent cites the 34-year duration of the marriage, the fact that petitioner had been the sole support of the family during the marriage, that respondent did not have the ability to maintain herself financially, that she had received a disproportionately low share of the marital property, that her needs exceeded $150 per week and that petitioner had sufficient income to meet her needs.

The awarding of maintenance is a matter within the sound discretion of the trial court and will not be disturbed on appeal unless it amounts to an abuse of discretion or is against the manifest weight of the evidence. (*Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 203, 387 N.E.2d 346; see *Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 349, 239 N.E.2d 792; *Stotlar v. Stotlar* (1977), 50 Ill. App. 3d 790, 800, 365 N.E.2d 1097.) Absent an abuse of discretion, a reviewing court should not substitute its discretion for that of the trial court. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.) Such an abuse of discretion occurs only where no reasonable man would take the view adopted by the trial court. See *Lee*, at 1127.

Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act allows for the awarding of maintenance only where the spouse seeking maintenance "(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and (2)

is unable to support himself through appropriate employment * * *, or (3) is otherwise without sufficient income." (Ill. Rev. Stat. 1979, ch. 40, par. 504(a)(1).) The trial court found that at the time of the dissolution respondent was not fully able to provide for her reasonable needs. Upon deciding that maintenance was warranted, the court looked to the six factors set out in section 504(b) of the Act to determine the proper amount of maintenance. (See *In re Marriage of Goldstein* (1981), 97 Ill. App. 3d 1023, 1029.) The factors include the financial needs and resources of the party seeking maintenance, the time needed to acquire education or training that will enable that party to find appropriate employment, the standard of living established during the marriage, the duration of the marriage, the age, physical and emotional condition of the parties and the ability of the spouse from whom maintenance is sought to meet his own needs. (See Ill. Rev. Stat. 1979, ch. 40, par. 504(b).) With the exception of marital misconduct (see Ill. Rev. Stat. 1979, ch. 40, par. 504(b)), the court is also permitted to consider factors not listed in the Act. See *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 658, 409 N.E.2d 321.

The trial court explained the basis for its decisions when it announced the property settlement and maintenance award. In addition to the $150 per week in maintenance, respondent can generate income from the property apportioned her in the settlement. Included in this property is $1,000 of stock and a condominium unit with $13,000 equity. If these assets are liquidated and added to the $34,000 in cash allotted to respondent, she will have $48,000 available to generate income. The trial court found this to be adequate to maintain her until she could obtain suitable employment and support herself independent of petitioner. Respondent counters that $150 per week does not enable her to maintain the standard of living she enjoyed during the marriage. As the trial court noted, however, there was insufficient money to permit both parties to live apart at the same standard of living to which they had become accustomed during the marriage. See *Simmons*, at 661.

■■ In deciding on the amount of the maintenance award, the trial court applied the factors set out in the Act to the factual determinations it made from the evidence introduced at trial. A review of the record does not reveal an abuse of discretion by the trial court, nor does it show that the maintenance award is against the manifest weight of the evidence. This court will not substitute its discretion for that of the trial court. (See *Lee*, at 1127.) The maintenance award of $150 per week is affirmed.

■■ Respondent's second contention on appeal is that the trial court abused its discretion by reserving jurisdiction for three years to review the maintenance award and ascertain that respondent has made a reasonable effort to procure suitable employment and maintain herself financially. The trial court did not set an automatic termination date for maintenance

payments. The court merely set a date when it would review the award to ascertain whether respondent at that time still meets the prerequisites to an award of maintenance: that she lacks property to provide for her needs and is "unable to support [herself] through appropriate employment" or is otherwise without sufficient income. (Ill. Rev. Stat. 1979, ch. 40, par. 504(a).) The Historical and Practice Notes to section 504(b)(2) of the Act, dealing with rehabilitative maintenance (the type awarded in the case at bar), help to explain the intentions of the drafters of the Act. The Notes state that section 504(b)(2) "creates an affirmative obligation on the part of the spouse seeking maintenance to seek employment, where plausible, and this reflects one of the most important changes brought about by this Act." (Ill. Ann. Stat., ch. 40, par. 504(b)(2), Historical and Practice Notes, at 529 (Smith-Hurd 1980).) By reserving the right to review the award after three years to determine whether respondent has made reasonable efforts to find suitable employment, the trial court has chosen a practical alternative designed to avoid the speculation often inherent in future maintenance awards. Rather than speculate regarding the necessity of maintenance three years hence (see *Pieper*, at 845), the trial court added an element of flexibility to its order. If at the end of the three years the court determines that respondent has reasonably sought employment and failed to find anything suitable, the court will undoubtedly decide that the maintenance should continue, possibly at a higher amount. If, however, respondent has chosen not to seek employment and begin supporting herself, the court could then deny her further maintenance. Having already determined that respondent is able to support herself, the court could justifiably end the maintenance, finding it improper under section 504(a). Alternatively, it is possible that respondent will have found employment that would not provide adequate support. Acting on a motion for modification, the court could then provide for maintenance in a suitable amount.

■■ Respondent has cited no authority preventing the trial court from reserving jurisdiction as done by the court below. Each of the cases she cites deals with maintenance awards containing automatic termination dates. (See, *e.g.*, *Pieper*, at 845; *In re Marriage of Rosan* (1972), 24 Cal. App. 3d 885, 897, 101 Cal. Rptr. 295, 303-04.) In fact, this court has recently held that such reservation of jurisdiction will serve the interests of justice in certain cases. (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 569, 425 N.E.2d 1146.) As previously discussed, the maintenance order in the present case does not contain an automatic termination date. On the contrary, the court below specifically amended its original order to provide that the termination of payments not be automatic. The trial court fashioned its order to allow for changes in the conditions of the

parties. The method adopted appears to be in the best interests of all concerned and is not an abuse of discretion.

The judgment below is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.